NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION and THE ADMINISTRATOR OF THE NEW JERSEY SPILL COMPENSATION FUND, <br><br> Plaintiffs, <br><br> v. <br><br> OCCIDENTAL CHEMICAL CORPORATION, TIERRA SOLUTIONS, INC., MAXUS ENERGY CORPORATION, REPSOL YPF, S.A., YPF, S.A., YPF HOLDINGS, INC. and CLH HOLDINGS, <br><br> Defendants. | Civ. No. 06-401 (GEB) <br><br> **MEMORANDUM OPINION** |

**BROWN, Chief Judge**

This matter comes before the Court upon: (1) plaintiffs New Jersey Department of Environmental Protection ("NJDEP") and the Administrator of the New Jersey Spill Compensation Fund's ("Administrator") (collectively "Plaintiffs") motion to remand this case to state court; and (2) defendants Occidental Chemical Corporation ("OCC"), Tierra Solutions, Inc. ("Tierra"), and Maxus Energy Corporation's ("Maxus") motion for a more definite statement of the Complaint. The action was reassigned to the undersigned on September 13, 2006, and the Court, having read and fully considered all of the parties' submissions, has decided this matter without oral argument pursuant to Federal Rules of Civil Procedure Rule 78. For the reasons set forth below, the Court will: (1) grant Plaintiffs' motion to remand; and (2) deny OCC's motion

1

for a more definite statement as moot.

I.     BACKGROUND

    A.     Plaintiffs' Allegations Concerning Defendants' Conduct

On or about December 13, 2005, Plaintiffs brought suit against defendants OCC, Tierra, Maxus, Repsol YPF, S.A. ("Repsol"), YPF, S.A. ("YPF"), YPF Holdings, Inc. ("YPF Holdings"), and CLH Holdings ("CLH") (collectively "Defendants") in the Superior Court of New Jersey. According to Plaintiffs, OCC and its predecessors-in-interest polluted the Passaic River with various pesticides and chemicals over a period of approximately twenty years. (Compl. ¶ 1.) Plaintiffs claim that in 1940, OCC's predecessor acquired a tract of land, about 3.4 acres in size, located in Newark, New Jersey. (*Id.* ¶¶ 15-18.) Plaintiffs refer to that location as the "Lister Site" and allege that, between 1940 and 1971, OCC and its predecessors "used, produced, and discarded" certain chemicals at the site, including dichlorodiphenyltrichloroethane ("DDT"), phenoxy herbicides, and 2,3,7,8-tetrachlorodibenzo-p-dioxin ("TCDD"). (*Id.* ¶¶ 23-25.) "As a result of OCC's practices at the Lister Site, TCDD has been found in the soil at and around the Lister Site, in the groundwater under and around the Lister Site, and in the Newark Bay Complex." (*Id.* ¶ 30.) Plaintiffs define the Newark Bay Complex as "the lower 17 miles of the Passaic River, Newark Bay, the lower reaches of the Hackensack River, the Arthur Kill, the Kill van Kull, and [] adjacent waters and sediments . . . ." (*Id.* ¶ 1.) According to the Complaint, during the relevant times, the chemicals that OCC allegedly discharged at the Lister Site and in the Passaic River – TCDD in particular – "migrated throughout the [Newark Bay Complex]." (*Id.*) Plaintiffs allege that the remaining Defendants, through various transfers of obligations,

were also responsible for the environmental liabilities resulting from the alleged pollution at the Lister Site.  (*Id.* ¶¶ 15-22.)  Moreover, Plaintiffs claim that Defendants have "orchestrated and implemented a strategy to delay and impede the clean-up and restoration of the Passaic River." (*Id.* ¶ 1.)

### B.     Regulatory Actions by the Federal Government and the State

The Complaint also describes various regulatory actions that the Federal Government and the State have taken with respect to the implicated areas.  In 1982, the U.S. Environmental Protection Agency ("EPA") initiated a National Dioxin Strategy that targeted facilities that produced certain of the chemicals that OCC allegedly discharged.  (*Id.* ¶ 34.)  In 1987, the EPA selected an interim remedy at the Lister Site.  (*Id.* ¶ 36.)  Former New Jersey Governor Kean issued an executive order authorizing the NJDEP "to engage in emergency measures 'necessary to fully and adequately protect the health, safety and welfare of New Jersey citizens.'"  (*Id.* ¶ 35.)  Pursuant to that order, the NJDEP "issued an administrative order on June 13, 1983, requiring OCC to implement certain stabilization measures at the Lister Site to prevent further TCDD migration off-site.  Two subsequent administrative consent orders were entered between [the NJDEP] and OCC in 1984 to address the Lister Site itself."  (*Id.*)

With respect to the Newark Bay Complex, the EPA issued an administrative order on consent ("AOC") on April 20, 1994, whereby "Tierra agreed to study a six-mile stretch of the Passaic River and to determine:  (1) the spatial distribution and concentrations of the TCDD and other contaminants in the Passaic River, (2) the primary human and ecological receptors of the contaminated sediments, and (3) the transport of contaminated sediment within the six-mile

3

stretch." (*Id.* ¶ 37.) Plaintiffs claim that after ten years, the study is not yet complete, and that instead of completing the study, Defendants have sought to "shift blame away from their activities on the Lister Site," "manipulat[e] the focus of the investigation away from TCDD," "mislead the regulators," and "bias the results of the investigation and testing that they controlled." (*Id.* ¶¶ 38-40.) Pursuant to an EPA letter dated January 30, 2001, Defendants are no longer responsible for certain aspects of that investigation. (*Id.* ¶ 42.)

The EPA entered another AOC with OCC and other parties, effective June 22, 2004, "to fund $10 million of a $19 million study of the 17-mile stretch of the Passaic River from the Dundee Dam to Newark Bay." (*Id.*) On February 13, 2004, the EPA entered an additional AOC with OCC to begin another study of the Lister Site, with a focus on Newark Bay and its adjacent waters. (*Id.* ¶ 43.)

On September 19, 2003, the NJDEP "issued a Spill Act directive . . . to OCC, Maxus, Tierra, and others pursuant to [N.J. Stat. Ann. 58:10-23.11], directing these entities to assess any natural resource that has been, or may be, injured as a result of the [TCDD discharges at] the Lister Site." (*Id.* ¶ 44.)

### C.    Plaintiffs' State Law Claims and the Relief That Plaintiffs Seek

Plaintiffs assert only state law claims in the Complaint. Those claims are based on: (1) the New Jersey Spill Compensation and Control Act, N.J. Stat. Ann. § 58:10-23.11, *et seq.*; (2) the New Jersey Water Pollution Control Act, N.J. Stat. Ann. § 58:10A-1, *et seq.*; (3) strict liability; (4) public nuisance; and (5) trespass. (*See* Compl. ¶¶ 52-89; Pls.' Br. 10.)

Plaintiffs seek monetary relief for various costs that the State allegedly has incurred, or

will incur, as well as declaratory judgment concerning Defendants' liability.  Specifically, Plaintiffs seek "reimbursement of any and all cleanup and removal costs the State of New Jersey has incurred [or] will incur, alone and working in conjunction with federal agencies, as a result of Defendants' discharge of TCDD into the Newark Bay Complex." (*Id.* ¶ 4.)  They also seek "damages for injury to the Upland Resources," which Plaintiffs describe as the "the natural resources of the Newark Bay Complex and those upland resources that have been, or may be in the future, injured as a result of the presence of TCDD and other hazardous substances in the Newark Bay Complex . . . ." (*Id.*)  Plaintiffs "also seek compensatory damages, punitive damages, declaratory relief, and equitable relief as set forth herein." (*Id.*)

On January 27, 2006, Defendants removed the present case to this Court.  On February 17, 2006, Defendants OCC, Tierra, and Maxus filed their motion seeking a more definite statement in the Complaint.  On February 24, 2006, Plaintiffs filed their motion to remand this case to state court.  The parties agree that if the Court remands this case to state court, there would be no need to address OCC's motion.  The Court will therefore begin by addressing Plaintiffs' motion to remand.

## II. DISCUSSION

### A. Plaintiffs' Motion to Remand

#### 1. Removal to Federal Court Based on Federal Jurisdiction

Defendants removed this case to federal court pursuant to 28 U.S.C. § 1441(b).  That section provides, in relevant part, that:

[a]ny civil action of which the district courts have original jurisdiction founded on

5

> a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties.

28 U.S.C. § 1441(b). Defendants' removal of this case was not based on diversity jurisdiction, and the Court will therefore consider only whether this Court has federal question jurisdiction over this case. *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 ("Absent diversity of citizenship, federal-question jurisdiction is required [for removal]").

"'[F]ederal question' cases . . . [are] those cases 'arising under the Constitution, laws, or treatises of the United States.'" *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987) (quoting 28 U.S.C. § 1331). "The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal question jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar*, 482 U.S. at 392. "The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Id.* The "well-pleaded complaint rule," however, is not "an unqualified bar to federal question jurisdiction" – "'the issue is not as straightforward as the black letter law appears.'" *Goepel v. Nat'l Postal Mail Handlers Union*, 36 F.3d 306, 310 (3d Cir. 1994) (quoting *United Jersey Banks v. Parell*, 783 F.2d 360, 366 (3d Cir.), *cert. denied*, 476 U.S. 1170 (1986)).

      2.    **Federal Question Jurisdiction in Cases Where the Plaintiff's Claims Are Based on State Law**

According to the Third Circuit Court of Appeals, "the Supreme Court [has] 'referred to two situations where federal jurisdiction could be available even though [a] plaintiff base[s] its

6

claim in state court on state law: (1) when 'it appears that some substantial, disputed question of federal law is a necessary element of one of the well-pleaded state claims' or (2) when it appears that [the] plaintiff's claim 'is 'really' one of federal law.'" *Goepel*, 36 F.3d at 310 (quoting *United Jersey Banks*, 783 F.2d at 366 (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 23 (1983))). The Court of Appeals found that, with respect to the first category of cases, "the [Supreme] Court was not enunciating a new basis for federal jurisdiction but instead was reaffirming the traditional well-pleaded complaint test." *Id.* (citations omitted). "Accordingly, unless we determine that one of [the plaintiff's] stated claims 'is 'really' one of federal law,' removal of the case to the district court [would be] improper . . . ." *Id.* (citations omitted).

A federal district court may exercise jurisdiction over this second category of cases – namely, cases based on claims that are "really" ones of federal law – pursuant to the complete preemption doctrine. Complete preemption is distinct from ordinary preemption, the latter of which cannot be the basis for a federal court's removal jurisdiction. *See Caterpillar*, 482 U.S. at 393 ("it is now settled law that a case may *not* be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue"). Nonetheless, "[a] state claim . . . may be removed to federal court because 'it is an independent corollary of the well-pleaded complaint rule that a plaintiff may not defeat removal by omitting to plead necessary factual questions in a complaint.'" *Goepel*, 36 F.3d at 310 (quoting *Franchise Tax Bd.*, 463 U.S. at 22).

7

### 3. Complete Preemption

"The complete preemption doctrine holds that 'Congress may so completely preempt a particular area, that any civil complaint raising this select group of claims is necessarily federal in character.'" *Railway Labor Executives Ass'n v. Pittsburgh & Lake Erie R.R. Co.*, 858 F.2d 936, 939 (3d Cir. 1988) (quoting *Metropolitan Life*, 481 U.S. at 63-64). For purposes of removal based on federal question jurisdiction, "'any complaint that comes within the scope of the federal cause of action [created by the federal statute] necessarily 'arises under' federal law . . . .'" *Id.* (quoting *Franchise Tax Bd.*, 463 U.S. at 24).

The Third Circuit Court of Appeals has provided a two-part test for determining whether there is complete preemption. First, the federal statute must contain "civil enforcement provisions within the scope of which the plaintiff's state claim falls." *Railway Labor*, 858 F.2d at 942. "If the federal statute creates no federal cause of action vindicating the same interest the plaintiff's state cause of action seeks to vindicate, recharacterization as a federal claim is not possible and there is no claim arising under federal law to be removed and litigated in federal court." *Id.*

Second, there must be "clear indication of a Congressional intention to permit removal despite the plaintiff's exclusive reliance on state law." *Id*. As the Third Circuit Court of Appeals explained in *Railway Labor*:

> If there is no affirmative indication of the requisite Congressional intent to permit removal, there can be no 'complete preemption.' If there is no such intent, the district court need not and should not address the issue of whether the state substantive law relied upon by the plaintiff has been preempted by federal law. That issue must be left for determination by the state court on remand.

*Id.* "[T]he relevant congressional intent [is] not an intent that the statute should displace state

8

law, but rather an intent that claims purportedly based on state law be removable." *Id.* at 941 (discussing *Metropolitan Life*, 481 U.S. at 67-68 (Brennan, J., concurring)).

"[T]here is a very limited area in which a federal court in a case removed from a state court . . . [may] recharacterize what purports to be a state law claim as a claim arising under a federal statute." *Id.* at 942. The Third Circuit Court of Appeals has observed that "[b]ecause lack of jurisdiction would make any decree in the case void and the continuation of the litigation in federal court futile, the removal statute should be strictly construed and all doubts should be resolved in favor of remand." *Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 29 (3d Cir. 1985) (citations omitted). In the absence of explicit direction from Congress, then, courts should be reluctant to find that the "'extraordinary pre-emptive power' necessary for the complete preemption doctrine" applies. *See Railway Labor*, 858 F.2d at 940-41 (quoting *Metropolitan Life*, 481 U.S. at 65).

    4.  **Whether CERCLA Completely Preempts Plaintiffs' State Law Claims for Purposes of Defendants' Removal of This Case to Federal Court**

Defendants argue that CERCLA completely preempts Plaintiffs' state law claims, and that this Court therefore has jurisdiction over this case. They acknowledge that the relevant inquiry is the two-part test set forth in *Railway Labor*, and argue that this case satisfies both elements. (Defs.' Br. 25.)

    a.  **Whether There Is Clear Indication of a Congressional Intention to Permit Removal**

In their briefs, the parties focus primarily on the second part of the *Railway Labor* test.

9

Defendants argue that section 113 of CERCLA provides the "clear indication of a Congressional intention to permit removal despite the plaintiff's exclusive reliance on state law" required for finding complete preemption. *Railway Labor*, 858 F.2d at 942. According to Defendants:

> Congress vested exclusive jurisdiction over claims challenging an EPA response action in the federal district courts, 42 U.S.C. § 9613(b), and provided that this jurisdiction may only be exercised in certain proceedings and at certain times in order to forbid any challenge to a CERCLA response action until after EPA's remedy is implemented. *See* 42 U.S.C. § 9613(h). This demonstrates that Congress intended claims related to an EPA response action to be litigated exclusively in federal court, with deference to EPA's decisions.

(Defs.' Br. 30.) Section 113(b) provides, in relevant part:

> Except as provided in subsections (a) and (h) of this section, the United States district courts shall have exclusive original jurisdiction over all controversies arising under this chapter, without regard to the citizenship of the parties or the amount in controversy.

42 U.S.C. § 9613(b). This section thus provides for exclusive federal jurisdiction of claims arising under CERCLA – it does not address whether cases based exclusively on state law claims should also be subject to federal jurisdiction. A review of the Supreme Court's treatment of the complete preemption doctrine shows that Defendants have failed to demonstrate the requisite congressional intent.

In *Metropolitan Life*, the Supreme Court considered whether ERISA completely preempted the plaintiff's state law claims in his lawsuit to recover disability benefits. The Court considered both the language and the legislative history of the statute. It observed that the relevant section provided:

> The district courts of the United States shall have jurisdiction, without respect to the amount in controversy or the citizenship of the parties, to grant *the relief provided for* in subsection (a) of this section *in any action*.

*Metropolitan Life*, 481 U.S. at 65 (quoting 29 U.S.C. § 1132(f)) (emphasis added).  In contrast, section 113(b) of CERCLA does not provide for federal jurisdiction in "any action" – it does so only for "all controversies arising under this chapter . . . ."  *Compare* 29 U.S.C. § 1132(f) *with* 42 U.S.C. § 9613(b).

In addition to the statutory language, the Supreme Court in *Metropolitan Life* also discussed ERISA's legislative history.  The Court found that Congress gave clear indication that it intended to provide for federal removal jurisdiction.  According to the Court, Congress expressed its intent by referring to section 301 of the LMRA, which the Supreme Court had interpreted, in *Avco Corp. v. Machinists*, 390 U.S. 557 (1968), as authorizing removal of actions seeking relief only under state law.  The Court observed that:

> The Conference Report on ERISA describing the civil enforcement provisions of § 502(a) says:  '[W]ith respect to suits to enforce benefit rights under the plan or to recover benefits under the plan which do not involve application of the title I provisions, they may be brought not only in U.S. district courts but also in State courts of competent jurisdiction.  *All such actions in Federal or State courts are to be regarded as arising under the laws of the United States in similar fashion to those brought under section 301 of the Labor-Management Relations Act of 1947.*'

*Metropolitan Life*, 481 U.S. at 65-66 (quoting H.R. Conf. Rep. No. 93-1280, p. 327 (1974)) (emphasis in original).  The Supreme Court further noted that:

> Senator Williams, a sponsor of ERISA, emphasized that the civil enforcement section would enable participants and beneficiaries to bring suit to recover benefits denied contrary to the terms of the plan and that when they did so '[i]t is intended that such actions will be regarded as arising under the laws of the United States, in similar fashion to those brought under section 301 of the Labor Management Relations Act.'

*Id.* at 66 (quoting 120 Cong. Rec. 29933 (1974)).  Defendants in this case have not identified any portion of CERCLA's legislative history showing such "clear indication of a Congressional

intention to permit removal" – they fail to refer to the legislative history at all.

The Supreme Court's analysis in *Franchise Tax Board of the State of California v. Construction Laborers Vacation Trust for Southern California*, 463 U.S. 1 (1983) is also instructive. There, the Court found that there was no complete preemption, through ERISA, of California's claims to enforce tax levies pursuant to state law. The Court discussed the language of section 502(a) of ERISA, finding that "[i]t neither creates nor expressly denies any cause of action in favor of state governments, to enforce tax levies or for any other purpose." *Id.* at 25. The Court also observed that section 514(b)(2)(A) of ERISA "states that 'nothing in this subchapter shall be construed to relieve any person from any law of any State which regulates insurance, banking, or securities.'" *Id.* According to the Court:

> Unlike the contract rights at issue in *Avco*, the State's right to enforce its tax levies is not of central concern to the federal statute. For that reason . . . on the face of a well-pleaded complaint there are many reasons completely unrelated to the provisions and purposes of ERISA why the State may or may not be entitled to the relief it seeks.

*Id.* at 25-26. Comparing the case to *Avco*, the Court noted that "ERISA does not provide an alternative cause of action in favor of the State to enforce its rights, while § 301 expressly supplied the plaintiff in *Avco* with a federal cause of action to replace its preempted state contract claim." *Id.* at 26.

Here, as in *Franchise Tax Board*, none of the CERCLA provisions that Defendants refer to "creates nor expressly denies any cause of action" for damages in the manner that Plaintiffs seek. (*See* Defs.' Br. 25-26, 29 (citing 42 U.S.C. §§ 9607(a), 9621(f)(2), 9613(f)).) Additionally, several CERCLA provisions explicitly permit the assertion of state law claims. For example, CERCLA contains a savings clause that provides:

> Nothing in this chapter shall affect or modify in any way the obligations or liabilities of any person under other Federal or State law, including common law, with respect to releases of hazardous substances or other pollutants or contaminants.  The provisions of this chapter shall not be considered, interpreted, or construed in any way as reflecting a determination, in part or whole, of policy regarding the inapplicability of strict liability, or strict liability doctrines, to activities relating to hazardous substances, pollutants, or contaminants or other such activities.

42 U.S.C. § 9652(d).  Moreover, section 114(a) refers specifically to the States, and provides:

> Nothing in this chapter shall be construed or interpreted as preempting any State from imposing any additional liability or requirements with respect to the release of hazardous substances within such State.

42 U.S.C. § 9614(a).  Finally, with respect to liability for response costs, section 107(j) provides:

> Nothing in this paragraph shall affect or modify in any way the obligations or liability of any person under any other provision of State or Federal law, including common law, for damages, injury, or loss resulting from a release of any hazardous substance or for removal or remedial action or the costs of removal or remedial action of such hazardous substance.

42 U.S.C. § 9607(j).

In light of the language contained in the civil enforcement provisions of CERCLA that Defendants cite and the CERCLA provisions expressly permitting claims based on state law, and in the absence of any reference to CERCLA's legislative history, Defendants fail to demonstrate that Congress intended to permit removal of actions based exclusively on state law claims.

### b. The Cases to Which Defendants Cite Should Be Distinguished

Defendants rely heavily on two cases where a federal court exercised jurisdiction over a state law action because the relief that the plaintiffs sought implicated CERCLA.  Each case, however, should be distinguished, both on their facts and in their analysis.

13

### (1) Those Cases Concerned Injunctive Relief Constituting a "Challenge" to the EPA's Actions

First, in each of the cases, the plaintiffs sought injunctive relief that would constitute a "challenge" interfering with a remedial cleanup plan that the EPA was pursuing. In *North Penn Water Authority v. BAE Systems*, No. Civ. A. 04-5030, 2005 WL 1279091 (E.D. Pa. 2005), the district court held that it had jurisdiction over the case, which was based on state law claims and removed to federal court, because there was complete preemption through CERCLA. *North Penn*, 2005 WL 1279091 at *8-9. The court found it significant that "[the plaintiff's] state law claims request both response costs and that this Court order [the defendants] to establish and maintain 'an appropriate and acceptable treatment system on [the allegedly contaminated site],' claims which clearly involve the federal interests in clean-up that Congress intended to address in CERCLA and [the Resource Conservation and Recovery Act]." *Id.* at *10. The court found that "the federal statutes relied upon by [the defendants] as the basis for removal contain civil enforcement provisions within which [the plaintiff's] state claims fall." *Id.*

Defendants also cite *Fort Ord Toxics Project, Inc. v. California Environmental Protection Agency*, 189 F.3d 828 (9th Cir. 1999). In *Fort Ord*, several of the defendants had entered into an agreement with the EPA "setting forth the procedures for a CERCLA remedial cleanup of [the relevant site]." *Fort Ord*, 189 F.3d at 830. That agreement provided that one of the defendants "place[] contaminated soil in a landfill on [the site]." *Id.* The plaintiffs sought injunctive relief against the cleanup effort. *Id.*

The plaintiffs in *North Penn* and *Fort Ord* sought injunctive relief that would constitute a "challenge" interfering with the terms of the EPA's remedial cleanup plans. Here, Plaintiffs seek

monetary relief. In particular, they seek "reimbursement of any and all cleanup and removal costs the State of New Jersey has incurred [or] will incur, alone and working in conjunction with federal agencies, as a result of Defendants' discharge of TCDD into the Newark Bay Complex." (Compl. ¶ 4.) They also seek "damages for injury to the Upland Resources," which Plaintiffs describe as the "the natural resources of the Newark Bay Complex and those upland resources that have been, or may be in the future, injured as a result of the presence of TCDD and other hazardous substances in the Newark Bay Complex . . . ." (*Id.*) Plaintiffs also seek compensatory damages, punitive damages, and declaratory relief concerning Defendants' liability, but expressly state that they are not seeking "any cleanup, removal or remedial action within the Newark Bay Complex . . . ." (*Id.* ¶¶ a-f.) This case does not constitute the type of "challenge" at issue in *North Penn* and *Fort Ord*.

### (2) The Reasoning in the Cited Cases Should be Distinguished

Moreover, *North Penn* and *Fort Ord* were based on reasoning that appears to be inconsistent with the requirements that the Third Circuit Court of Appeals has set forth for finding complete preemption. The court in *North Penn* was guided by *Fort Ord* and *ARCO Environmental Remediation, L.L.C. v. Department of Health and Environmental Quality of the State of Montana*, 213 F.3d 1108 (9th Cir. 2000). *See North Penn*, 2005 WL 1279091 at *7-8. The Ninth Circuit Court of Appeals, however, appears to apply a more expansive view of when a federal court has jurisdiction over claims based solely on state law.

In *ARCO*, the state had entered an agreement with the EPA "to exchange information and

15

documents pertaining to the Superfund sites [in question]." *ARCO*, 213 F.3d at 1112. The plaintiff sued a state agency seeking injunctive relief, specifically, that the agency "turn over documents pertaining to the CERCLA-mandated ecological risk assessment for [the relevant site]" and "an order prohibiting closed-door consultation between employees and consultants of the EPA and [the state agency]." *Id.* at 1113. The Ninth Circuit Court of Appeals stated that:

> [a] state-created cause of action can be deemed to arise under federal law (1) where federal law completely preempts state law; (2) where the claim is necessarily federal in character; or (3) where the right to relief depends on the resolution of a substantial, disputed federal question.

*Id.* at 1114 (internal citations omitted). In *Goepel*, however, the Third Circuit Court of Appeals limited federal jurisdiction to only the first category of cases, namely, cases in which there is complete preemption. *Goepel*, 36 F.3d at 312 (stating that "the two-part test for complete preemption [is] the only basis for recharacterizing a state law claim as a federal claim removable to a district court").

The court in *Fort Ord* found that the district court had jurisdiction in that case, but did not explain whether it was because there was complete preemption. For two reasons, it appears that the court in *Fort Ord* based its holding on other grounds. First, in its discussion of complete preemption, the Ninth Circuit Court of Appeals found in *ARCO* that "CERCLA does not completely occupy the field of environmental regulation." *ARCO*, 213 F.3d at 1114. Second, the *Fort Ord* court found federal jurisdiction because the plaintiffs' claims "'directly related to the goals of the cleanup itself.'" *Fort Ord*, 189 F.3d at 831 (quoting *McClellan Ecological Seepage Situation v. Perry*, 47 F.3d 325, 330 (9th Cir. 1995)). A requirement that a case be "directly related" to CERCLA is less stringent than the requirement for finding complete preemption. *See*

*Railway Labor*, 858 F.2d at 942 (requiring both "civil enforcement provisions [in the federal statute] within the scope of which the plaintiff's state claim falls" and "clear indication of a Congressional intention to permit removal"). The Third Circuit Court of Appeals has limited federal jurisdiction over actions based exclusively on state law to those cases where there is complete preemption. Insofar as *Fort Ord*, *ARCO*, and *North Penn* were decided on other grounds, those cases should be distinguished.

Defendants are correct in noting that this case "relates to the same goals as the [EPA's actions] – it addresses the same areas [and] the same contaminants [and] implicates a party to a CERCLA AOC, and . . . Plaintiffs are seeking [in a directive issued by the NJDEP] dredging as the remedial option for the Passaic River site and related areas." (Defs.' Br. 15, 18.) Defendants are wrong, however, in claiming that the fact that this case "relates to" the EPA's actions is sufficient to find complete preemption. *See Railway Labor*, 858 F.2d at 942 ("it is clear from the Supreme Court case law that the doctrine of complete preemption operates in a very narrow area" and requires satisfaction of the two-part test).

The Third Circuit Court of Appeals has observed that "[s]tate courts are competent to determine whether state law has been preempted by federal law and they must be permitted to perform that function in cases brought before them, absent a Congressional intent to the contrary." *Railway Labor*, 858 F.2d at 942. While Defendants may ultimately prevail on the issue of whether CERCLA preempts Plaintiffs' state law claims, "[t]hat issue must be left for determination by the state court on remand." *Id.*

  **B.**  **Defendants' Motion for a More Definite Statement**

In addition to Plaintiffs' motion to remand, OCC, Tierra, and Maxus have filed a motion for a more definite statement of Plaintiffs' claims, as set forth in the Complaint. The Court's grant of Plaintiffs' motion to remand renders OCC's motion moot, and the Court will therefore deny that motion.

**III.**  **CONCLUSION**

For these reasons, Plaintiffs' motion to remand to state court is granted, and OCC's motion for a more definite statement is denied as moot. An appropriate form of order is filed herewith.

Dated: September 28, 2006

                   <u>  s/ Garrett E. Brown, Jr.           </u>
                   GARRETT E. BROWN, JR., U.S.D.J.